**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                                                    Case No. 3:21-cr-23(S1)-TJC-MCR

**WAYNE JOSEPH CAVINS,**

    **Defendant.**
_____/

### WAYNE CAVINS'S SENTENCING MEMORANDUM

Defendant Wayne Cavins, by and through his undersigned counsel, respectfully submits this Sentencing Memorandum in anticipation of the Sentencing Hearing currently scheduled for May 17, 2023, at 1:30 p.m. and states the following:

**I.     INTRODUCTION**

Mr. Cavins has accepted responsibility and pled guilty to the Count V of the Indictment, which charges Attempted Online Enticement of a Minor to Engage in Illegal Sexual Activity, in violation of 18 U.S.C. § 2422(b). Despite the fact that Mr. Cavins has no prior convictions, the charge subjects him to a sentencing range of 10 years to life imprisonment and an advisory sentencing guideline range of life (total offense level 43, criminal history category I). Additionally, he faces 5 years up to life on supervised release and a lifetime of reporting to the authorities as a sex offender. Mr. Cavins respectfully submits that a guideline sentence would be far greater than necessary to comply with the purposes of sentencing, as set forth in 18 U.S.C. § 3553(a), in this case.

Mr. Cavins understands that he broke the law, that he must be punished for his crime, and that he must be sentenced to prison. He is truly sorry for the crimes that he has committed, and he stands ready to accept his punishment. He understands that there is no excuse for his actions and that he must pay the consequences. He, as much as anyone, understands the trauma felt by the victims of child abuse. He was repeatedly sexually and physically abused from the time he was 7 years old until he was 11 years old. This abuse has haunted him throughout his young life, and, unfortunately, it has skewed his perspective of life.

Given all of the relevant information, policies, and circumstances, including, but not limited to, the advisory guidelines and the factors set forth in § 3553(a), Mr. Cavins respectfully requests that this Court fashion a sentence of imprisonment that is at or close to the mandatory minimum, which is substantially below the advisory guideline range. Such a sentence will provide punishment that is sufficient, but not greater than necessary, to achieve the goals of sentencing.

## II.     SENTENCING PROCESS

The first step in fashioning an appropriate sentence is to correctly calculate the applicable sentencing guideline range. *See, e.g., United States v. McBride*, 511 F.3d 1293, 1297 (11th Cir. 2007). The second step is to consider the factors set forth in § 3553(a),[1] as applied to the individual case before the Court, and find the sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing. *See id*. (Citing *United States v. Booker*, 543 U.S. 220, 264 (2005)); *see also United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005). In other words, after correctly calculating the advisory guideline range and considering

2

the § 3553(a) factors, the Court may impose a more lenient or more severe sentence than the guidelines suggest. *See, e.g., United States v. Winingear*, 422 F.3d 1241, 1244 (11th Cir. 2005)). The starting place for sentencing, therefore, is the guidelines. *Gall v. United States*, 552 U.S. 38, 46 (2007).

The factors set forth in § 3553(a) are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed–
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established in the sentencing guidelines;
(5) any pertinent policy statement;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## The Sentencing Guideline Calculations

The pre-sentence report ("PSR") has calculated Mr. Cavins's guidelines as follows:

| USSG | Description | Level(s) | PSR |
|---|---|---|---|
| § 2G2.1(a) | Base offense level | 32 | ¶36 |
| § 2G2.1(b)(1)(B) | Minor older than 12 but less than 16 | +2 | ¶37 |
| § 2G2.1(b)(2)(A) | Commission of a sexual act | +2 | ¶38 |
| § 2G2.1(b)(4)(A) | Material portrayed sadistic/masochistic conduct | +4 | ¶39 |

| § 2G2.1(b)(6)(B) | Use of a computer | +2 | ¶40 |
| --- | --- | --- | --- |
| § 4B1.5(b)(1) | Pattern of Activity | +5 | ¶45 |
| § 3E1.1(a), (b) | Acceptance of responsibility | -3 | ¶46-¶47 |

Thus, just considering the enhancements, the result is a total offense level of 43, the same level as a defendant convicted of an offense involving the death of another human being or some defendants classified as career offenders or armed career criminals. Mr. Cavins is facing a guidelines range of life, for his first criminal conviction in any court and for his first time in prison.

Fortunately, this range is merely advisory, and is only *one* factor that must be considered by the Court. The remaining § 3553(a) factors provide strong justification for a sentence well below that range, especially when considered in conjunction with the lack of empirical evidence supporting some of the enhancements utilized in calculating the guidelines.[1]

### III.   HISTORY AND CHARACTERISTICS

Wayne Cavins is a 64-year-old man who suffers from significant brain issues that, while not excusing his conduct in this case, do help to explain his poor judgment and impulsiveness. He was arrested in March 2021 and has been confined at the Bradford County Jail since.

---

[1] Mr. Cavins' actions, for which he is facing life, is in direct contradiction to the sentence received by Gary Mckenzie. Mr. McKenzie and the minor victim were observed by the minor victim's sisters engaging in a sexual act in Mr. McKenzie's vehicle. Mr. McKenzie was charged in St. Johns County with Lewd and Lascivious Battery, pled guilty and was sentenced to 15 years' probation. See attached Exhibit 15 which contains the information and Order of Probation for that case. Crucially, in that case, the minor victim had an account on Grindr where he identified himself as an 18-year-old to interested older males

Mr. Cavins was born in Pittsburgh, Pennsylvania, in 1958. He never knew his father, who had left the home by the time he was born. His brothers relate that he was raised by his mother primarily at their grandparents' home. When Mr. Cavins was ten, the family relocated to Central Florida, which is where he remained until his arrest.

Mr. Cavins graduated Deland High School in 1976, attended some college and worked as a respiratory therapist. In 1999, he met and fell in love with James Cantwell, and together they ran a successful dog-grooming business, FiFi's of DeBary. Mr. Cavins describes Mr. Cantwell as the love of his life and was devastated when he died of a brain aneurysm in 2010.[2] Mr. Cavins continued to run FiFi's to mostly positive reviews until the day of his arrest.[3]

Medical Issues and Brain Cyst

Mr. Cavins was first diagnosed with a 4-centimeter subarachnoid cyst on the left side of his brain shortly after Mr. Cantwell's death in 2010.[4] Another MRI in 2016 re-confirmed the diagnosis and measured the cyst at 5.1 by 3.8 centimeters.[5]

The undersigned retained neurologist Dr. Mark Rubino to order an updated

---

[2] Mr. Cantwell's obituary is attached as Exhibit 1.
[3] BirdsEye and Google reviews are attached as Exhibits 2 and 3.
[4] Reports of a CT scan from Fish Memorial Hospital and an MRI on Mr. Cavins' brain by Orange City Imaging, both performed in 2010, are attached as Exhibits 4 and 5. This exhibit is sealed, and undersigned will provide the parties with a copy.
[5] A report of the 2016 MRI from Advanced Imaging is attached as Exhibit 6. This exhibit is sealed, and undersigned will provide the parties with a copy.

MRI of Mr. Cavins in 2022 and evaluate the results. Dr. Rubino found the cyst unchanged but also found "advanced vascular disease … consistent with cognitive impairments and possibly an early vascular dementia," resulting in loss of executive functioning, to include loss of judgment and planning and increased impulsiveness.[6]

Mr. Cavins also underwent a neuropsychological evaluation by Dr. Valerie McClain after she was retained by the undersigned. Her evaluation incorporated Dr. Rubino's report. She found Mr. Cavins's "cognitive deficits are consistent with a neurocognitive disorder and significantly impacted his ability to regulate his behaviors."[7]

Mr. Cavins has a history of other medical issues. In 2019, his primary care physician cited[8]:

- Testicular dysfunction, first diagnosed in 2014.
- Anxiety disorder and depression, first diagnosed in 2011.
- Pre-diabetes, first diagnosed in 2014.
- High cholesterol (hyperlipidemia and hypercholesterolemia).
- Back and neck pain caused by degenerative disc disease. Mr. Cavins said he first started experiencing symptoms in 2000.
- An abdominal ulcer removed in 2015.
- Vitamin D deficiency.

---

[6] Dr. Rubino's report is attached as Exhibit 7. He will testify about his findings at Mr. Cavins's sentencing hearing. This exhibit is sealed, and undersigned will provide the parties with a copy.

[7] A copy of Dr. McClain's report is attached as Exhibit 8. Dr. McClain will testify about her findings at Mr. Cavins's sentencing hearing. This exhibit is sealed, and undersigned will provide the parties with a copy.

[8] A copy of Mr. Cavins's medical history from Dr. John Hill at West Volusia Sports and Family Medicine is attached as Exhibit 9. This exhibit is sealed, and undersigned will provide the parties with a copy.

Mr. Cavins was diagnosed with degenerative disc disease in 2018 and underwent spinal fusion surgery for it in 2019.[9] In the two years Mr. Cavins has been at the Bradford County Jail, the medical staff has medicated him for these issues.[10]

Mr. Cavins's age should be considered when calculating a fair sentence that is sufficient but not greater than necessary. He is currently 64 years old, and his life expectancy without the stresses of incarceration and without accounting for poor health would be 12 to 15 years.[11] Given his poor health and likely lengthy incarceration, it is probably much less. One study found that each year in prison takes two years off a person's life expectancy.[12]

Despite his medical issues, Mr. Cavins has tried to be a help to other inmates at the jail, as attested by former fellow inmate Gregory Garcia.[13]

D.G.'s home life

Although D.G.'s mother claims her son's contact with Mr. Cavins understandably sent him into a tailspin, the fact is that there were serious problems in D.G.'s home months before he contacted Mr. Cavins online about being his

---

[9] Reports of a spinal MRI from LAD Imaging in 2018 and subsequent surgery from Florida Orthopaedic Associates in 2019 are attached as Exhibits 10 and 11. This exhibit is sealed, and undersigned will provide the parties with a copy.
[10] A list of medications provided by the Bradford County Jail is attached as Exhibit 12. This exhibit is sealed, and undersigned will provide the parties with a copy.
[11] Life expectancy table from the Social Security Administration is attached as Exhibit 13.
[12] Prison Policy Initiative, *Incarceration Shortens Life Expectancy*, June 26, 2017 is attached as Exhibit 14.
[13] Mr. Garcia's letter is attached as Exhibit 15.

"sugar daddy." St. Johns County CAD reports and arrest and booking reports show deputies were called to D.G.'s Ponte Vedra Beach home five times between October 9 and November 22, 2020.[14] The calls make it clear that D.G.'s home frequently experienced conflict and violence. While there is no doubt that the offense in this case has had a significant impact on the minor victim, the defense submits that some of D.G.'s problems originated much closer to home than perhaps his family wishes to acknowledge.

A month after Mr. Cavins's arrest in March 2020, D.G. had found another adult male, Gary Lee McKenzie, online and convinced him to drive to Ponte Vedra Beach, where they had oral sex in the parking lot of D.G.'s subdivision. Mr. McKenzie fled when D.G.'s sisters caught them but eventually was arrested and charged.[15] He pleaded no contest to lewd and lascivious battery on a child under 16 and was sentenced by St. Johns County Circuit Judge R. Lee Smith to 15 years of sex offender probation.

Though Mr. Cavins chatted with D.G. about performing sex acts in person, that never happened.

### IV. NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE

---

[15] Mr. McKenzie's 2021 charging information and Order of Probation is attached as Exhibit 16.

An adult who statutorily rapes a minor is not subject to any mandatory minimum. The base offense level for such an offense is level 18. *See* USSG § 2A3.2(a). Even with all the enhancements added, the offense level after acceptance of responsibility would be level 21. At level 21, category I, the guideline range of imprisonment – for actually committing statutory rape – is 37 to 46 months.

The Sentencing Commission and Congress have thus determined that an adult, who actually sexually penetrates a minor under 16, i.e., commits statutory rape, will face a sentencing range that is, at the low end, 16 percent of the low end of Mr. Anderson's guideline range. *Compare* level 17, category I, range 24 to 30 months, *with* level 34, category I, range 151 to 188 months. Under these circumstances, and taking into consideration the other § 3553(a) factors, surely a sentence of 10 years – or double the high end of the statutory rape guideline range would reflect the seriousness of Mr. Cavin's offense, promote respect for the law, and be a just punishment.

Additionally, the case of *United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007), is instructive in this regard. The defendant's guideline range in that case, for distributing child pornography, was identical to the sentencing range Mr. Anderson now faces. The defendant in *McBride*, however, had prior convictions for committing lewd acts on children. *Id*. at 1295-96. Moreover, that defendant admitted, during counseling, to numerous other sexual acts with minor children. *Id*. at 1296. In arguing against a variance below the guideline range of 151 to 188 months, the government noted that the defendant had sexually abused numerous children and that he had failed in past treatment programs. *Id*. The Court rejected

9

the government's arguments and sentenced the defendant to 84 months' imprisonment. *Id*. The government appealed, arguing that the sentence was unreasonable. *Id*.

The Eleventh Circuit affirmed, holding that the 84-month sentence was not substantively unreasonable under the circumstances. *Id*. at 1298. The appellate court observed:

> In announcing Defendant's sentence, the court stated that the sentence provides for "a significant term of incarceration to account for his misconduct and the seriousness of the offense and, frankly, to keep him off the streets for that period of time so that he will not be in a position to repeat this conduct in society." About Defendant's own history, the district court also said that the Defendant "has perhaps one of the worst histories that I have seen since being on the bench, being essentially abandoned by his family and then consistently abused."

*Id*.

In concluding that the district court did not commit a "clear error in judgment in determining that a sentence considerably less than the Sentencing Guidelines' recommended range was appropriate[,]" the Eleventh Circuit noted that "the sentence in this case involves significant time in prison and a 10-year period of supervised release." *Id.*

The same can be said, in Mr. Cavins's case, of a sentence of 10 years imprisonment. Mr. Cavins's history is far less egregious than the defendant in *McBride*, even if the Court accepts the testimony of his adopted son. Mr. Cavins has never received treatment for his own childhood abuse or to address the underlying causes of his offenses nor has he been given opportunities in the past to address that behavior and then failed in past treatment programs, unlike the defendant in *McBride*. Mr. Cavins is amenable to treatment. If he survives his sentence of incarceration, then he will be on supervised release for a number of years. Conditions that

10

involve sexual offender treatment will help to protect the public from any recidivist activity and supervision by a probation officer increases the protection for the public. Prior research in this field indicates that individuals who participate in community supervision in conjunction with mental health treatment that focuses on sex offense issues recidivate at lower rates than those who do not participate in such programs.

Additionally, because Mr. Cavins has never served time in prison before his instant incarceration, a sentence of 10 years would suffice to serve deter future misconduct and protect against recidivism as required by §§ 3553(a)(2)(B) and (2)(C). *See, e.g., United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming a below guideline sentence of 78 months (guidelines called for 108) in a distribution of child pornography case, noting that "significant is the district court's finding that a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned.

Consideration of this factor is consistent with § 3553's directive that the sentence reflect the need for 'just punishment,' *id.* § 3553(a)(2)(A), and 'adequate deterrence,' *id.* § 3553(a)(2)(B)"); *United States v. Mishoe*, 241 F.3d 214 (2d Cir. 2001) ("[I]f a defendant served no time or only a few months for the prior offenses, a sentence of even three or five years for the current offense might be expected to have the requisite deterrent effect."); *United States v. Qualls*, 373 F. Supp.2d 873 (E. D. Wis. 2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration. . . .").

11

Incarceration is required in the instant case – at least 10 years in prison. But the length of incarceration should be tempered by the length of supervised release imposed. The instant offenses allow for as much as life on supervised release. Additionally, the stringent reporting requirements for sex offenders that will follow Mr. Cavins for the rest of his life should be considered in deciding how long to incarcerate him.

## V.    CONCLUSION

There is no doubt that Mr. Cavins must be punished for his crime and that he must be sent to prison. There can also be no doubt that, given his age, and his physical and mental condition that a sentence to the mandatory minimum is sufficient to address all the purposes of sentencing. He will have a lifetime of reporting to the authorities, as a sex offender. He will serve a lengthy term of supervised release.

In light of the above, a guideline sentence would not be reasonable in this case, i.e., it would be greater than necessary to satisfy the purposes of sentencing. Mr. Cavins therefore requests a sentence well below the advisory guideline range, together with a lengthy term of supervised release.

**A. FITZGERALD HALL, ESQ.**
**FEDERAL DEFENDER**
**MIDDLE DISTRICT OF FLORIDA**

Respectfully Submitted By:

 /s/Waffa J. Hanania, Esq.
Waffa J. Hanania, Esq.
Assistant Federal Defender

Florida Bar No. 0888631<br>
200 West Forsyth Street, Suite 1240<br>
Jacksonville, Florida 32202<br>
Telephone: (904) 232 3039<br>
Fax: (904) 232 1937<br>
Email: Waffa_hanania@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that undersigned electronically filed the foregoing with the Clerk of Court and sent notice to Assistant U.S. Attorney Ashley Washington and Probation Officer Irish Anderson, this the 12th day of May 2023.

<u><em><strong>s/Waffa J. Hanania, Esq.</strong></em></u><br>
Assistant Federal Defender